IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN KEITH MADDEN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CIV-13-1350-HE |
| ) | |
| (WARDEN) JIM FARRIS, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Respondent filed a response, Doc. 8, together with the relevant state court trial transcripts (TR). Doc. 10. Petitioner replied, Doc. 11, and the matter is now at issue. For the reasons discussed below, the undersigned recommends that the court deny habeas relief.

**I.  Introduction.**

Kristian Bruner and Shalese Frasier were shot and killed in July 2008, and the State of Oklahoma charged Petitioner with two counts of first-degree murder. After a jury convicted him, the Oklahoma Court of Criminal Appeals

(OCCA) affirmed his conviction on direct appeal. Petitioner now seeks a writ of habeas corpus.

## II. The relevant facts as established at trial.

Firefighters responded to an emergency call on July 4, 2008, and found Kristian Bruner and Shalese Frasier dead in Mr. Bruner's car. TR vol. 2, at 367, 369. The car was parked on the side of the road in a neighborhood in Spencer, Oklahoma. *Id.* at 356-58, 367. Mr. Bruner was slumped over in the front driver seat, and Ms. Frasier was lying in the back passenger seat. *Id.* at 372 & State's Exs. 19-21, 23-24. Both victims had been fatally shot from the car's front passenger seat; Mr. Bruner was shot in the right cheek and Ms. Frasier was shot in the head. TR vol. 3, at 508-13; *id.* vol. 6, at 826, 831-34, 839. Investigators secured the scene and collected cigarette butts from outside the vehicle's front driver and passenger doors. TR vol. 2, at 378-81; *id.* vol. 3, at 494-96, 499-500.

Monica Kirklin last saw Kristian Bruner around 9:00 p.m. on the evening of July 3, 2008. TR vol. 2, at 310-11. Mr. Bruner had returned home with Petitioner, and both Petitioner and Mr. Bruner left in the victim's car a short while later. *Id.* at 313-15. Petitioner was sitting in the vehicle's front passenger seat. *Id.* at 315. Ms. Kirklin's last communication with Mr.

2

Bruner occurred around 10:45 p.m., when Mr. Bruner texted her from his cell phone – number (405) 822-7145. *Id.* at 315-17.

Misty Milsap saw Mr. Bruner for the last time around 9:30 p.m. on July 3, 2008. *Id.* at 300-01. According to Ms. Milsap, Mr. Bruner met her at a gas station and was with Petitioner. *Id.* at 301-02. Mr. Bruner and Petitioner left the gas station in Mr. Bruner's car. *Id.* at 305-06. A short time thereafter, "somewhere between 9:30 and 10:00 p.m.," Mr. Bruner picked Ms. Frasier up from her home. *Id.* at 336, 346. Ms. Frasier's sister testified that "there must have been someone in the front passenger seat," because her sister got into the back seat. *Id.* at 353.

Petitioner used Mr. Bruner's cell phone – number (405) 822-7145 – to call his friend Ashley Miller at 11:46 p.m. that evening. *Id.* at 390; TR vol. 5, at 640-41. Then, at 12:10 a.m. the morning of July 4, 2008, Petitioner used Mr. Bruner's cell phone to call Nancy Gist. TR vol. 2, at 410; *id.* vol. 3, at 574. At his request, Ms. Gist picked Petitioner up outside a church in Spencer, Oklahoma around 12:30 a.m. TR vol. 2, at 411-13. Petitioner's face was swollen, and he informed Ms. Gist that "he had been in a fight with two people." *Id.* at 415-46. Petitioner emitted a strong chemical smell, indicating to Ms. Gist that he had been smoking "water," or "PCP." *Id.* at 421-22.

3

Petitioner called Ms. Gist around 6:30 p.m. the same evening, again from Mr. Bruner's cell phone. *Id.* vol. 3, at 575.

Petitioner gave police conflicting accounts of his time during the days of July 3-4, 2008. State's Exs. 56-57;[1] TR vol. 5, at 621-31. Eventually, Petitioner admitted that he had been in Spencer, Oklahoma on July 3, 2008, but claimed to have been visiting his cousin, Ricco Wilson. State's Ex. 57; TR vol. 5, at 623. Ricco Wilson was in Dallas, Texas on July 3, 2008, and did not return to Oklahoma until approximately 5:00 a.m. on the morning of July 4, 2008. TR vol. 5, at 682-83.

An Oklahoma State Bureau of Investigation (OSBI) analyst tested the DNA obtained from the cigarettes collected from the scene. TR vol. 6, at 747, 749-50. Two of the cigarettes had a mixture of Petitioner's DNA and Shalese Frasier's DNA, one had a mixture of Petitioner's DNA and Kristina Bruner's DNA, and one had only Petitioner's DNA. *Id.* at 769-70.

Finally, two individuals heard Petitioner discuss the crime. Chris Myers heard Petitioner say that he "busted on a guy and a girl" and "had to smoke somebody." *Id.* at 789. Petitioner admitted that he was "wet" at the

---

[1] *See* TR vol. 3, at 587; *id.* vol. 5, at 601-02 (video interviews published to the jury).

4

time, i.e., having had ingested "PCP or embalming fluid." *Id.* at 790. Petitioner specified that he had "busted" the male victim in the "right side of the jaw." *Id.* at 791. Mr. Myers also heard Petitioner say that he had only been caught because he had been using Mr. Bruner's cell phone. *Id.* at 793-94. Norman Adams heard Petitioner tell someone that "he wished that he could punch rewind and he wouldn't never even capped them two niggers[.]" *Id.* at 869.

### III. Petitioner's claims.

Petitioner raises four claims for relief, alleging that: (1) trial counsel was ineffective; (2) the trial court allowed testimony resulting in a Confrontation Clause violation; (3) two consecutive life sentences are excessive; and (4) cumulative error rendered the trial fundamentally unfair. Doc. 1, at 5-27.[2]

### IV. Standard of review for habeas relief.

A petitioner is entitled to federal habeas relief only if the state court's merits-based adjudication of his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

---

[2] Citation to page numbers in the parties' pleadings refers to the court's CM-ECF pagination.

5

by the Supreme Court of the United States[.]" Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, 28 U.S.C. § 2254(d). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

This Court first determines "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

Clearly established law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "A state court decision involves an 'unreasonable application' of federal law if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotation omitted) (alteration in original). Thus, "[a]s a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

Throughout the analysis, the court must presume the state court's factual findings are correct unless the petitioner rebuts that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**V. Petitioner's claims relying on Oklahoma statutes and constitution.**

In part, Petitioner seeks federal habeas relief based on violation of the Oklahoma Constitution and state law. Doc. 1, at 5, 19, 22-23. But such violations would not entitle Petitioner to federal habeas relief. *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims,

whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)"). Therefore, the undersigned recommends that the court deny any claim based on violation of Oklahoma's constitution or laws.

## VI. Petitioner's claims relying on the federal constitution.

After reviewing Petitioner's claims based on alleged violations of the federal constitution, the undersigned recommends that the court deny habeas relief.

### A. Petitioner's ineffective assistance of trial counsel claim.

Petitioner first seeks habeas relief on grounds that trial counsel provided ineffective assistance. Doc. 1, at 5-11. The OCCA rejected this claim on the merits, Doc. 8, Ex. 3, at 2-3, and the undersigned finds that the OCCA's decision was reasonable.

#### 1. Clearly established law.

For claims involving ineffective assistance of counsel, the Supreme Court "clearly established" federal law in *Strickland v. Washington,* 466 U.S. 668 (1984). There the court held that a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial. *Id.* at 690-91. An attorney's performance is only considered "deficient" if it falls

"outside the wide range of professionally competent assistance." *Id.* at 690. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Because of *Strickland's* generality, this Court must give the state appeals court considerable latitude in its analysis, or a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). With this latitude, the federal district court assesses the reasonableness of the OCCA's *Strickland* application. *See Harrington*, 131 S. Ct. at 785 (2011).

### 2. Trial counsel's alleged failure to investigate.

Norman Adams testified that he overheard Petitioner tell "Wind Dog" that he wished "he wouldn't never even capped them two niggers[.]" TR vol. 6, at 868-69. According to Petitioner, trial counsel was ineffective for failing to investigate Norman Adams' story. Specifically, Plaintiff complains that with proper investigation, counsel would have discovered that Petitioner had been speaking to Winford Leroy McKissick "aka 'Winn Dogg.'" Doc. 1, at 7-8. In turn, counsel could have called Mr. McKissick as a witness and he would have denied that Petitioner made any such comment. *Id.*; *see also id.* at Ex. A.

The OCCA rejected this claim finding that counsel's alleged deficiency was not prejudicial. The court stated:

> Given the strength of all the other evidence presented at trial, including similar incriminating statements attributed to [Petitioner] by another witness, we find that even if McKissick had testified and somehow negated Adams' testimony, the outcome of the trial would have remained the same.

Doc. 8, Ex. 3, at 2. The undersigned finds that the OCCA's conclusion was reasonable.

As illustrated above, *supra* § II, the evidence clearly establishes that: (1) Mr. Bruner was last seen with Petitioner late in the evening of July 3, 2008; (2) Mr. Bruner and Ms. Frasier were killed in Spencer, Oklahoma sometime after Mr. Bruner texted Ms. Kirklin at 10:45 p.m. on July 3, 2008; (3) Petitioner used Mr. Bruner's cell phone at 11:46 p.m. on July 3, 2008, and again at 12:10 a.m. on July 4, 2008; (4) Ms. Kirklin picked Petitioner up at 12:30 a.m. on July 4, 2008, from a church in Spencer, Oklahoma; (5) Petitioner smelled like "water" and claimed to have fought with two people; (6) Petitioner's DNA was on cigarettes found at the crime scene; and (7) Petitioner gave conflicting and inaccurate accounts to police officials. Additionally, Petitioner made statements in front of Chris Myers that he killed two people while he was "wet" and even correctly described "busting" Mr. Bruner in the right jaw.

10

With this evidence, a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt even without Norman Adams' testimony. So, applying the AEDPA's double-deference standard, the undersigned cannot say that the OCCA was unreasonable when it held that the outcome of Petitioner's trial would not have been different even if trial counsel had investigated Norman Adams' story and called Mr. McKissick to refute his testimony. The undersigned recommends that the court deny the petition on this ground.

### B. Petitioner's claim involving a Confrontation Clause violation.

In addition to the cigarettes collected at the crime scene, officers found a cigar. TR vol. 6, at 771. OSBI analyst Stambaugh testified that she had personally tested the cigarettes, but had not personally tested the cigar. *Id.* at 745-47, 771-72. Nevertheless, the trial court allowed Ms. Stambaugh to read from another analyst's report and testify that the other analyst had found no DNA material on the cigar. *Id.* at 773-75. Petitioner alleges that this hearsay testimony violated the Confrontation Clause. Doc. 1, at 13-17. The OCCA agreed that a Confrontation Clause error had occurred, but found that the error was harmless. Doc. 8, Ex. 3, at 4-6. Applying the relevant federal law, the undersigned agrees.

### 1. Clearly established law.

In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that testimonial hearsay violates a defendant's right to confront and cross-examine under the Confrontation Clause. Under Supreme Court precedent, the OSBI analyst's testimony regarding the cigar was "testimonial," and its admission likely violated the Confrontation Clause. *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2716-19 (2011).

However, "Confrontation Clause violations are subject to harmless error analysis and thus may be excused depending on the state of the evidence at trial." *Brown v. Uphoff*, 381 F.3d 1219, 1226-27 (10th Cir. 2004) (citation omitted). The OCCA recognized the error and found it harmless under state law, relying on *Chapman v. California*, 386 U.S. 18 (1967). Doc. 8, Ex. 3, at 6. *Chapman* teaches that a constitutional error may be found harmless if it is "harmless beyond a reasonable doubt." 386 U.S. at 24. On habeas review, this Court "assess[es] the prejudicial impact of constitutional error . . . under the 'substantial and injurious effect' standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under

the 'substantial and injurious effect' standard set forth in *Brecht*, . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* . . . ." (citations omitted)).

Under *Brecht*, the court can consider the constitutional violation harmless if the error lacked a substantial and injurious effect or influence on the verdict. 507 U.S. at 637-38. So, the court

> consider[s] factors such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case.

*Littlejohn v. Trammell*, 704 F.3d 817, 844-45 (10th Cir. 2013) (citation and internal quotations omitted).

### 2. Analysis.

Applying the above standard, the undersigned finds that the Confrontation Clause violation was harmless under *Brecht*.

The cigar held no DNA material. Accordingly, the cigar neither proved nor disproved Petitioner's presence at the crime scene. Nor did it prove or disprove the presence of a fourth party at the crime scene. This, in combination with the overwhelming evidence presented at trial, *supra* § II,

convinces the undersigned that Ms. Stambaugh's testimony regarding the lack of DNA material on the cigar had no substantial and injurious effect or influence on the verdict. Under these circumstances, the court should regard the constitutional violation as harmless.

C. **Petitioner's allegation that his sentences are excessive.**

The jury fixed Petitioner's sentence at life imprisonment on both counts, TR vol. 7, at 998-99, and the trial judge entered the recommended punishment but ordered Petitioner's life sentences to run consecutively. Sentencing TR, at 18. According to Petitioner, this in effect sentenced him to life without the possibility of parole and was thus a "*de facto* nullification of the jury's sentence" in violation of Oklahoma law. Doc. 1, at 22. Petitioner also argues that the consecutive life sentences resulted in one constitutionally excessive sentence. *Id.*

The undersigned notes that it was entirely within the trial court's discretion to order Petitioner's sentences to run consecutively. *See* Okla. Stat. tit. 22, § 976. As discussed above, *supra* § V, this Court is not concerned with whether the trial judge violated Oklahoma's sentencing laws – on habeas review, only whether Petitioner's sentences are excessive under the federal

14

constitution matters. The OCCA held that they are not, and the undersigned finds this holding reasonable. Doc. 8, Ex. 3, at 6-7

### 1. Clearly established law.

The Supreme Court has clearly established that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Ewing v. California*, 538 U.S. 11, 21 (2003) (citation omitted). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* (citation and internal brackets omitted). Indeed, the court "afford[s] wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000).

Generally then, habeas review "ends once [the court] determine[s] the sentence is within the limitation set by statute." *Id.*; *see also Britt v. Embry*, 302 F. App'x 774, 783 (10th Cir. 2008) (holding that because life without the possibility of parole is within the statutory range for first degree murder, "habeas review of [the] sentence" was complete). Finally, "[t]he Eighth

Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes." *Hawkins v. Hargett*, 200 F.3d 1279, 1285 n.5 (10th Cir. 1999); *see also Powers v. Dinwiddie*, 324 F. App'x 702, 705 (10th Cir. 2009) (rejecting petitioner's claim that the trial court ordered his sentences to run consecutively, rendering his sentences constitutionally excessive, on grounds that the Eighth Amendment analysis "'focuses on the sentence imposed for each specific crime, not on the cumulative sentences for multiple crimes'" (citation omitted)).

### 2. Analysis.

Petitioner was convicted on two counts of first-degree murder and given a life sentence for each conviction. In Oklahoma, first-degree murder carries a range of punishment including: (1) death; (2) imprisonment for life without parole; or (3) imprisonment for life. *See* Okla. Stat. tit. 21, § 701.9. So, the undersigned finds that Petitioner's sentences to life imprisonment fall within the statute's limitation. And, because the Eighth Amendment analysis focuses only on the length of the individual sentences, and not on their combined length, the undersigned finds that the OCCA reasonably held that Petitioner's sentences are not constitutionally excessive.

### D. Cumulative error.

In Petitioner's final argument, he asks the court to consider the aggregation of errors to determine whether these rendered his trial unfair. Doc. 1, at 27. The OCCA rejected the claim, finding that Petitioner had "identified only one error (i.e. confrontation error), and having found that error harmless, there is no basis for granting relief on a cumulative error theory." Doc. 8, Ex. 3, at 7. The undersigned finds no unreasonable application of clearly established Supreme Court law.

#### 1. Clearly established law.

The Tenth Circuit has recognized a circuit split regarding whether a cumulative error analysis is clearly established federal law, and has acknowledged its own lack of published precedent. *See Cole v. Trammell*, __ F.3d. __, No. 11-5133, 2014 WL 595768, n.14 (10th Cir. Feb. 18, 2014). However, the circuit also notes "that Tenth Circuit 'precedent may very well signal where our court has come down on the issue – *viz.*, that cumulative-error analysis is clearly established law.'" *Id.* (citation omitted). With that posture, the court finds that the OCCA's decision on this issue was reasonable.

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn*, 704 F.3d at 868 (citations and internal quotations omitted); *see also Ochoa v. Workman*, 669 F.3d 1130, 1146 (10th Cir. 2012) ("In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors . . . ."). As that language implies, this analysis "does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). However, under such review, the court also considers the impact of any constitutional claims that "have been individually denied for insufficient prejudice." *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (holding that because a claim involving a "substantive prejudice components essentially duplicate the function of harmless-error review," "such claims should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice").

## 2. Cumulative error analysis.

Under this standard, the undersigned considers the cumulative impact of the Confrontation Clause violation and trial counsel's non-prejudicial failure to investigate Norman Adams' statements. Even in the aggregate, these errors did not render Petitioner's trial fundamentally unfair.

For example, the testimony given in violation of the Confrontation Clause did not point to Petitioner's guilt, nor did it point to the guilt of any other person, *supra* § VI.B.2. In other words, the testimony was neutral. And, while testimony from Mr. McKissick might have been useful in discrediting Norman Adams, it would not have undermined the other overwhelming evidence of guilt – including the testimony of Chris Myers, who also overheard Petitioner admit to killing two individuals, shooting the male victim in the right jaw, and possessing Mr. Bruner's cell phone, *supra* §§ II; VI.A.2.

Because any rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty – despite the Confrontation Clause violation and trial counsel's failure to investigate – the undersigned finds that the OCCA could reasonably decide that cumulative error did not render Petitioner's trial fundamentally unfair.

**VII. Recommended ruling and notice of right to object.**

For the reasons discussed above, the undersigned recommends that the court deny the petition for habeas relief.

The undersigned advises the parties of their right to object to this report and recommendation by the 31st day of July, 2014, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

Entered this 11th day of July, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE